No. 22-20222

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

NOLAN SHARP,
*Defendant-Appellant.*

_____

On Appeal from the United States District Court
For the Southern District of Texas, Case No. 4:21-CR-189-1

_____

BRIEF OF PLAINTIFF-APPELLEE

_____

JENNIFER B. LOWERY
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

AUDREY LYNN MANESS
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9102

ATTORNEYS FOR APPELLEE

## STATEMENT REGARDING ORAL ARGUMENT

The United States believes oral argument is unnecessary in this case. The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. Fed. R. App. P. 34(a)(2)(C).

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF AUTHORITIES.......................................................iv

STATEMENT OF JURISDICTION ...........................................1

STATEMENT OF THE ISSUE ...................................................2

STATEMENT OF THE CASE ...................................................3

    A.    Course of Proceeding and Disposition Below .........................3

    B.    Statement of Facts .................................................3

        1.    Sharp's criminal history..................................3

        2.    The instant offense.......................................4

        3.    Sharp pleads guilty ......................................5

        4.    The district court sentences Sharp...............................6

        5.    Sharp's appeal............................................11

SUMMARY OF THE ARGUMENT .......................................12

ARGUMENT .......................................................................13

    Issue:    The district court erred in imposing the U.S.S.G. § 2K2.1(b)(4) enhancement because there is no evidence that the firearm ever had a serial number that could be "altered or obliterated." .........................13

    A.    The standard of review is *de novo*. ..............................13

## TABLE OF CONTENTS, cont'd

**Page**

B.    U.S.S.G. § 2K2.1(b)(4) requires that a firearm have "an altered or obliterated serial number." ......... 13

C.    There is no evidence that Sharp's firearm had a serial number that was "altered or obliterated." ......... 17

CONCLUSION ........................................................... 18

CERTIFICATE OF SERVICE ................................................ 19

CERTIFICATE OF COMPLIANCE .......................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*United States v. Bakhtiari*, 913 F.2d 1053 (2d Cir. 1990) .......... 14, 16, 17

*United States v. Garza-Lopez*, 410 F.3d 268 (5th Cir. 2005) ................. 13

*United States v. Jones*, 927 F.3d 895 (5th Cir. 2019) ............. 9, 10, 16, 17

*United States v. Laughrin*, 438 F.3d 1245 (10th Cir. 2006) ....... 15, 16, 17

*United States v. Mann*, 710 F.3d 274 (8th Cir. 2012) ............................ 14

*United States v. O'Flanagan*, 339 F.3d 1229 (10th Cir. 2003) ............... 16

*United States v. Seesing*, 234 F.3d 456 (9th Cir. 2000) .................... 15, 16

**Statutes and Rules**

18 U.S.C. § 922(g)(1) ....................................................................................3

18 U.S.C. § 922(g)(5) ..................................................................................14

18 U.S.C. § 924(a)(2) ....................................................................................3

18 U.S.C. § 3231 ...........................................................................................1

18 U.S.C. § 3742(a) .......................................................................................1

28 U.S.C. § 1291 ...........................................................................................1

Fed. R. App. P. 4(b)(A)(i) ............................................................................1

Fed. R. App. P. 34(a)(2)(C) ...........................................................................i

5th Cir. R. 28.2.2 ..........................................................................................1

# TABLE OF AUTHORITIES, cont'd

**United States Sentencing Guidelines**                    **Page(s)**

U.S.S.G. § 2K2.1 ................................................................. 16

U.S.S.G. § 2K2.1(a)(4)(B)(i)(II) ........................................ 8

U.S.S.G. § 2K2.1(a)(6)(A) ................................................. 6

U.S.S.G. § 2K2.1(b)(1)(A) ................................................. 6

U.S.S.G. § 2K2.1(b)(2) ...................................................... 14

U.S.S.G. § 2K2.1(b)(4) ............................................... *passim*

U.S.S.G. § 2K2.1(b)(4)(B) ......................................... 2, 6, 8

U.S.S.G. § 2K2.1(b)(6)(A) ................................................. 7

## Other Authorities

United States Sentencing Commission
https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-comment/20221017/doj.pdf ................................................. 13

## <u>STATEMENT OF JURISDICTION</u>

Defendant-Appellant Nolan Sharp appeals his sentence, entered by the district court (Ellison, J.) on May 2, 2022. ROA.7, 63.[1]  18 U.S.C. § 3231.  Sharp timely filed a notice of appeal on May 3, 2022, pursuant to Fed. R. App. P. 4(b)(A)(i).  ROA.7, 69.  This Court's jurisdiction vests under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

---

[1] "ROA." refers to the record on appeal, which is cited in accordance with 5th Cir. R. 28.2.2.  "PSR" refers to the presentence report, with all addenda, cited by ROA number and paragraph number(s).

1

## <u>STATEMENT OF THE ISSUE</u>

The record demonstrates that Sharp was in possession of a gun that had no serial number, but it does not establish that the gun had a serial number at some point in the past.  The issue on appeal is whether the district court erred in imposing a four-level enhancement under U.S.S.G. § 2K2.1(b)(4)(B), which instructs courts to apply the enhancement when a firearm has "an altered or obliterated serial number."

# STATEMENT OF THE CASE

## A.    Course of Proceeding and Disposition Below

Sharp was indicted on one count of illegally possessing a firearm after having previously received a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ROA.3, 9. In November 2021, he pleaded guilty, without a plea agreement, to the charge. ROA.6. He was sentenced in April 2022 to 46 months' imprisonment. ROA.7, 63. Sharp filed a timely Notice of Appeal. ROA.69.

## B.    Statement of Facts

### 1.    <u>Sharp's criminal history</u>

Sharp's criminal record dates back to 2008 when, at age 14, Sharp pleaded guilty to burglarizing a vehicle. ROA.152 (PSR ¶ 30). At age 16, Sharp was charged with and pleaded guilty to criminal trespass and unlawfully carrying a weapon as a passenger in a stolen vehicle. ROA.153 (PSR ¶¶ 31-32). A few months later, Sharp pleaded guilty to burglarizing a house. ROA.154 (PSR ¶ 33). The following year, in 2012, he pleaded guilty to a separate burglary. ROA.155 (PSR ¶ 35). This was the only juvenile conviction for which Sharp received criminal history points (3) at sentencing for the instant offense. ROA.155 (PSR ¶ 35).

After Sharp turned 18 in 2012, he was charged with and pleaded guilty to evading arrest. ROA.155 (PSR ¶ 36) (two criminal history points). In 2013, Sharp was arrested and pleaded guilty to unlawfully carrying a weapon. ROA.156 (PSR ¶ 37) (two criminal history points). Later that same year, Sharp was arrested for and pleaded guilty to a third burglary; he was sentenced to five years' imprisonment. ROA.156 (PSR ¶ 38) (three criminal history points). Sharp's sentence was discharged in June 2018. ROA.156 (PSR ¶ 38).

In the eighteen months between his release from prison and the instant offense, Sharp was charged in Texas courts with

- Theft (11/26/2018);
- Unlawful use of a criminal instrument (6/12/2019);
- Prostitution (7/2/2019);
- Deadly conduct (8/28/2019);
- Unlawful possession of firearm by felon (8/28/2019);
- Felon in possession of firearm (8/29/2019); and
- Burglary of a vehicle (10/7/2020).

ROA.158-60 (PSR ¶¶ 43-49). These charges were all pending at the time of Sharp's sentencing in the instant federal matter.

2.    <u>The instant offense</u>

On December 4, 2020, the "Backstreet Breadwinners" gang, including Sharp, gathered for a memorial celebration at a local park in

Houston. ROA.149 (PSR ¶ 7). Sharp left the park in his vehicle at the end of the celebration and was stopped by Houston Police Department officers after police observed Sharp speeding. ROA.149 (PSR ¶ 8). When an officer approached the vehicle, Sharp opened the door and displayed signs of nervousness. ROA.149 (PSR ¶ 9). The officer saw a loaded semi-automatic pistol on Sharp's lap. ROA.150 (PSR ¶ 9). The officer took Sharp into custody without incident; a criminal history check showed that Sharp had prior felony convictions. ROA.149-50 (PSR ¶ 9).

As the Presentence Investigative Report (PSR) recounts, following Sharp's arrest:

> The defendant's vehicle was inventoried…. The search yielded a loaded .223 caliber semi-automatic short-barreled rifle. The rifle did not have a serial number, and its maker is unknown. No other contraband was recovered from the vehicle.

ROA.150 (PSR ¶ 10). Sharp was charged with being a felon in possession of a firearm. ROA.150 (PSR ¶ 11).

3.    <u>Sharp pleads guilty</u>

On November 2, 2021, Sharp appeared before the district court (via video) to plead guilty. Sharp confirmed for the court that he had not been threatened or coerced to plead, that he had not been offered any

compensation or bribe, and that he was entering into the plea knowingly and voluntarily. ROA.118. Sharp also confirmed that he was satisfied with his attorney, and the attorney confirmed that Sharp was competent to proceed. ROA.118-19. The court reviewed with Sharp his right to go to trial and discussed the sentencing process. ROA.119-21.

The government then recounted the facts of the offense, noting that the pistol found on the defendant's lap traveled in interstate commerce. ROA.122. In response, Sharp claimed the weapons found in his car belonged to a female passenger. ROA.123-24. Sharp proceeded with his plea of guilty, and the court accepted the plea. ROA.125.

4.   The district court sentences Sharp

In the PSR prepared in advance of sentencing, the probation officer assigned a base offense level of 14 pursuant to U.S.S.G. § 2K2.1(a)(6)(A). ROA.151 (PSR ¶ 20). The officer added the following enhancements and reductions:

- Two levels pursuant to U.S.S.G. § 2K2.1(b)(1)(A) ("offense involved three or more firearms") because the offense and a related January incident each involved two firearms;

- Four levels under U.S.S.G. § 2K2.1(b)(4)(B) because a "short-barreled rifle, without a serial number, was recovered during a search of the defendant's vehicle

subsequent to his arrest;"

- Four levels pursuant to U.S.S.G. § 2K2.1(b)(6)(A) because "the defendant used or possessed any firearm or ammunition in connection with another felony offense…. When the defendant was arrested on January 13, 2021, it was determined he was in possession of two firearms while engaging in organized crime, to wit: participating in a catalytic converter theft ring, a felony;" and

- A three-level reduction for acceptance of responsibility.

ROA.151-52 (PSR ¶¶ 21-29). The resulting total offense level was 21. ROA.152 (PSR ¶ 29). The PSR and the record on appeal contain no additional details about the short-barreled rifle.

As noted above, Sharp had several prior convictions, which resulted in ten criminal history points and a Criminal History Category IV. ROA.157 (PSR ¶ 40). The resulting Guidelines range was 70 to 87 months of imprisonment. ROA.167 (PSR ¶ 84). The probation officer concluded the report by noting that an underrepresented criminal history score can provide a basis for an upward departure and referenced Sharp's several pending charges. ROA.168-69 (PSR ¶¶ 98-99).

Following delivery of the report to the parties, the government filed a statement of no objections. ROA.60. Sharp objected to each of the enhancements proposed by the probation officer. He argued that there

was not enough reliable evidence to hold him responsible for the guns found in the January 13, 2021, incident. ROA.176. He also argued that there was insufficient evidence to hold him responsible for the short-barreled rifle, which was found on December 4, 2020, behind the passenger seat of the vehicle covered by a women's jacket and a stuffed animal. ROA.176-78. And he argued that the "U.S.S.G. § 2K2.1(a)(4)(B)(i)(II)" enhancement was improper because there was "no evidence that the rifle is less than 16 inches." ROA.177.

The probation officer maintained that each of the enhancements were appropriate, noting that for the December 4, 2020, incident, "the defendant was in control of the vehicle [and thus] was responsible for the vehicle's contents." ROA.209. The officer also responded to the Sharp's objection to the 4-level enhancement related to the short-barreled rifle:

> The aforementioned 4-level enhancement, pursuant to USSG § 2K2.1(a)(4)(B)(i)(II), was not applied. The PSR did not apply an enhancement based on the rifle being found to be less than 16 inches in length. The PSR applied a 4-level enhancement pursuant to USSG 2K2.1(b)(4)(B), which calls for such enhancement if the firearm had an altered or obliterated serial number. In this case, the rifle was found to be without a serial number. As such, it has been determined the guidelines were applied properly in this instance, the PSR is supported as written, and no changes will be made.

ROA.210. The day before the sentencing hearing, Sharp filed a supplemental objection to the PSR and argued that the 4-level U.S.S.G. § 2K2.1(b)(4) enhancement was still improper "because there is no evidence that the rifle ever had a serial number, thus it would be impossible to alter or obliterate it." ROA.211.

The district court addressed the § 2K2.1(b)(4) enhancement at the sentencing hearing the following day. Sharp's counsel argued that "there is no evidence the rifle in question ever had a serial number on it. So there was no way it could have been altered or obliterated since there was nothing there." ROA.130. In response, the government referenced *United States v. Jones*, 927 F.3d 895 (5th Cir. 2019), where the

> gun in question had a plate on it, and the plate on the gun was removed at some point. Now, it didn't matter who removed it. It wasn't altered. It wasn't obliterated. It wasn't scratched. It just wasn't there. So the fact that it wasn't there, the defense made a similar argument to the Court… [that] the firearm itself was altered and there was no serial number. The [Jones] Court sa[id:] We disagree with this flawed semantic distinction because the efficacy of the serial number plate is negated by its removal from the firearm. So the efficacy of the serial number is negated because it is not on this firearm.

ROA.131-32. In response to a follow-up question from the court, the government emphasized that § 2K2.1(b)(4) is a strict liability

enhancement, and whether the defendant removed the serial number or not, "he had a weapon that no longer has a serial number to identify it, makes it untraceable, and that is what the Court and the guidelines are trying to prevent." ROA.132-33. Sharp's counsel responded, recalling that in *Jones*, "there had been some evidence that there had been a serial number on the weapon because the plate had been removed. There is nothing before the Court, or in the discovery, that this weapon in question ever had a serial number, that it could have been a homemade weapon that never had a serial number." ROA.133.

The parties agreed that the enhancements relating to the January 13, 2021, incident should not be applied and the court concurred, stating:

> We will do that. On the other one I do believe [the government] is correct, it's a strict liability offense, that what the law is worried about is untraceable and unmarked guns. So I am going to have to deny that objection on that.

ROA.135-36.

The adjusted Guidelines range was 37 to 46 months' imprisonment. When the government requested a high-end Guidelines sentence of 46 months, the district court found that Sharp has "a serious record. A lot of the offenses don't even count." ROA.138. Sharp's counsel requested a low-end Guidelines sentence and mental health treatment. ROA.141.

The court sentenced Sharp to 46 months, stating: "I do believe this is a top of the guidelines sentence. I'm sorry. But the record is sobering. It really is." ROA.143. The court imposed a 3-year term of supervised release with the requested mental health treatment, imposed no fine, and also ordered that the federal sentence run concurrent to any sentence in the pending state court case. ROA.143.

5.  <u>Sharp's appeal</u>

Sharp timely filed a Notice of Appeal, ROA.184, and argues that the district court clearly erred in assessing the 4-level U.S.S.G. § 2K2.1(b)(4) "altered or obliterated serial number" enhancement. The government filed a motion requesting that the case be remanded for resentencing; a panel of this Court denied the motion and requested briefing.

## SUMMARY OF THE ARGUMENT

U.S.S.G. § 2K2.1(b)(4) directs district courts to enhance a defendant's offense level by four if a firearm "had an altered or obliterated serial number." As Sharp explains, it is an open question in this Court whether § 2K2.1(b)(4) applies when there is no evidence that the firearm in question ever bore a serial number. *See* Appellant's Br. at 10. Four other circuit courts of appeals have addressed the issue and have held that the firearm must have had a serial number for it to be "altered or obliterated." Because the record in this case does not establish that the firearm ever had a serial number, the government agrees with Sharp that remand for resentencing is appropriate here.

# ARGUMENT

**Issue:** **The district court erred in imposing the U.S.S.G. § 2K2.1(b)(4) enhancement because there is no evidence that the firearm ever had a serial number that could be "altered or obliterated."**

## A. The standard of review is *de novo*.

When a defendant preserves his objection, this Court "review[s] the district court's interpretation and application of the Guidelines de novo." *United States v. Garza-Lopez*, 410 F.3d 268, 273 (5th Cir. 2005).

## B. U.S.S.G. § 2K2.1(b)(4) requires that a firearm have "an altered or obliterated serial number."

Section 2K2.1(b)(4) of the Sentencing Guidelines directs courts to add four offense levels if any firearm involved in the offense "had an altered or obliterated serial number." Commentary to this Guideline does not address whether a firearm that has never had a serial number qualifies for the enhancement.[2] As Sharp notes, the Fifth Circuit has not directly addressed whether U.S.S.G. § 2K2.1(b)(4) applies if the firearm in question never bore a serial number. *See* Appellant's Br. at 10.

---

[2] The Criminal Division of the Department of Justice has asked the Commission to "evaluate trends in gun crime not currently addressed by the firearms guidelines, such as the prevalence of 'ghost guns,' un-serialized, privately made firearms that are difficult to trace, and the rise of firearms transferred to or accessed by youth and later used in violent crime." https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-comment/20221017/doj.pdf at page 6 (last accessed Oct. 25, 2022).

However, the four circuits that have addressed the issue have uniformly held that the enhancement is inappropriate in such circumstances.

In *United States v. Bakhtiari*, 913 F.2d 1053, 1056 (2d Cir. 1990), the defendant was not in the country legally and was in possession of a silencer and several other weapons, in violation of 18 U.S.C. § 922(g)(5). "There was no evidence that the silencer had ever had a serial number, nor that the defendant had ever 'obliterated' that serial number," but the defendant's offense level was enhanced nonetheless. *Id.* at 1063. On appeal, the Second Circuit explained that Section 2K2.1(b)(4)—then Section 2K2.1(b)(2)—"specifically applies only to those firearms which '[were] stolen or [have] an altered or obliterated serial number.'" The court remanded the case to the district court "to determine whether Bakhtiari ever obliterated a serial number on the silencer or whether the silencer never had a serial number. If it is the latter, then any upward adjustment pursuant to § 2K2.2(b)(2) is inappropriate." *Id.*

The Eighth Circuit also addressed this issue in *United States v. Mann* after the district court assessed the § 2K2.1(b)(4) enhancement for grenades in the defendant's possession. 701 F.3d 274, 310 (8th Cir. 2012). In remanding for resentencing the court explained:

14

> The Government's witness Stephen Shelley testified on cross examination that grenades do not have serial numbers. Instead, the grenades have lot numbers that identify them as part of a group, rather than individually. The testimony indicated that many of the lot numbers and manufacturing dates had been removed from the grenades found near Mann's property. The sentencing enhancement applies only to firearms which once possessed a serial number which has been removed; it does not apply to firearms that were never equipped with a serial number. Accordingly, the enhancement was applied in error.

*Id.* at 310 (internal citations omitted).

The Ninth Circuit followed suit in *United States v. Seesing*, 234 F.3d 456, 460 (9th Cir. 2000), where the defendant received the enhancement because his homemade silencer did not have a serial number. The court reversed, explaining

> While we understand the district court's desire to respond the underlying purpose of Guidelines § 2K2.1(b)(4), discouraging the use of untraceable weaponry, and agree that this purpose is frustrated by the use of homemade silencers without serial numbers, the plain language of the Guideline is clear. The government does not argue that Seesing's silencer had any serial number, much less one that was altered or obliterated. Thus, applying the Guideline was plain error. While we are concerned with this apparent loophole in the Guidelines, 'repair' is the job of the Sentencing Commission, not the court.

*Id.* (internal citations omitted).

The following year, the Tenth Circuit came to a similar conclusion in *United States v. Laughrin*, 438 F.3d 1245 (10th Cir. 2006). The

shotgun officers seized from the defendant's car was manufactured before 1969 and thus did not have a serial number. *Id*. at 1248. The defendant was indicted on weapons charges and was convicted by a jury. *Id.* at 1246. At sentencing, the district court applied the enhancement for an "altered or obliterated serial number" over the defendant's objection.

On appeal, the Tenth Circuit reversed. It noted that § 2K2.1 had been amended twelve times between the 1990 *Bakhtiari* decision and its own 2006 opinion, but that the Sentencing Commission never addressed "firearms that never had a serial number." *Id.* at 1249. "The Sentencing Commission's failure to make any change in the language of § 2K2.1(b)(4) in the years since *Bakhtiari* and *Seesing* were decided 'suggest[s] that the Sentencing Commission was content with [those] interpretation[s].'" *Id.* (quoting *United States v. O'Flanagan*, 339 F.3d 1229, 1235 (10th Cir. 2003)) (alterations in original)). The court thus remanded "to the district court with instructions to vacate the sentence and conduct further proceedings in accordance with this opinion." *Id.*

The closest case from this Court on the issue is *United States v. Jones*, 927 F.3d 895 (5th Cir. 2019), where a metal panel containing the serial number had been removed from the firearm but the number

remained on the firearm slide. The record there established that the firearm had a serial number—it had two. *Id.* at 897. This Court rejected Jones' argument that the firearm, not the serial number, had been altered and affirmed the enhancement. *Id.* at 898.

### C. There is no evidence that Sharp's firearm had a serial number that was "altered or obliterated."

Given the case law and the fact that the record here does not establish whether the firearm in question ever had a serial number, the government respectfully requests that the Court remand for resentencing. *E.g., Bakhtiari*, 913 F.2d at 1063 (remanding for resentencing); *Laughrin*, 438 F.3d at 1249 (same).

## **CONCLUSION**

This Court should remand for resentencing.

Respectfully submitted,

JENNIFER B. LOWERY
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

*s/ Audrey Lynn Maness*
Audrey Lynn Maness
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9102
Email: audrey.maness@usdoj.gov

ATTORNEYS FOR APPELLEE

# <u>CERTIFICATE OF SERVICE</u>

I, Assistant United States Attorney Audrey L. Maness, hereby certify that on October 26, 2022, an electronic copy of the Appellee's Brief was served by notice of electronic filing via this court's CM/ECF system upon opposing counsel Nelson Ebaugh.

*s/ Audrey L. Maness*
Audrey L. Maness
Assistant United States Attorney

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,113 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

3.    This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4.    This brief complies with the electronic submission of 5th Cir. R.25.2.1, because it is an exact copy of the paper document.

5.    This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security scanning program and is free of viruses.

*s/ Audrey L. Maness*
Audrey L. Maness
Assistant United States Attorney

Date:  <u>October 26, 2022</u>
